## STATE OF HAWAII, Plaintiff-Appellee, *v.* MELVIN LOUIS WARNER, Defendant-Appellant

### NO. 6092

DECEMBER 23, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant Melvin Louis Warner (hereinafter referred to as appellant) was found guilty by a jury of murder.[1]

---

[1] There are presently no degrees of murder in Hawaii. The offense of murder is defined by HRS § 707-701 (Special Pamphlet) as follows:

§ 707-701 Murder. (1) Except as provided in section 707-702, a person com-

He was thereafter sentenced by the trial court to serve a prison term of twenty years. The single question presented on this appeal is whether the trial court erred in refusing to give appellant's requested instructions on the offense of manslaughter. We conclude that the trial court's refusal to give the requested instructions on manslaughter was erroneous, and we reverse the judgment and sentence of the court below.

It is unnecessary to set forth all the evidence elicited at trial. We focus mainly on the extent to which evidence relating to the manslaughter issue was presented. The evidence produced by the State, if taken alone, tended to establish a clear case of appellant's intentionally or knowingly causing the death of the victim by shooting him with a firearm.[2] It was uncontradicted that appellant shot the victim, Thomas Boykin, at close range with a revolver, and that Boykin died as a direct result of the gunshots.

Appellant, on the other hand, maintained that he shot the victim in self-defense. However, he also testified that he felt "frustrated" and "was under a lot of strain and lot of stress" at the time of the shooting. The evidence, as reflected in appellant's testimony, revealed the following circumstances. Appellant had originally been living in Waikiki together with a female companion named Helen Crawley. After some time, Thomas Boykin, who had been a good friend of appellant, began to live in the same apartment with appellant and Crawley. Appellant testified that for the next year-and-a-half, he furnished both Crawley and Boykin, who were unemployed, with food, clothing, and other necessities of life.[3] In January

---

mits the offense of murder if he intentionally or knowingly causes the death of another person.

(2) Murder is a class A felony for which the defendant shall be sentenced to imprisonment as provided in section 706-606.

[2] The jury was correctly instructed that the prosecution was required to prove beyond a reasonable doubt such an "intentional or knowing" killing of another by appellant in order to find appellant guilty of murder. See n. 1, *supra*.

[3] Appellant was at the time in the military stationed in Hawaii.

of 1975, appellant left for the mainland to be discharged from the military. Before leaving Hawaii, however, he told Crawley that he would be back in a "couple of months", and he asked Boykin to "take care" of Crawley for him while he was gone. As of that time, Boykin and Crawley were not involved romantically with each other. However, when appellant returned to Hawaii some four months later, he found that Crawley and Boykin had become lovers and had moved to another apartment. Appellant testified that various personal belongings which he had left behind, such as a stereo, television set, blankets, pots and pans, and dishes, as well as some clothing, were still in the possession of, and were being used by, Boykin and Crawley. Appellant, however, moved in with Crawley and Boykin, and Crawley resumed her relationship with appellant. After several days, Crawley decided to return to Boykin instead of remaining with appellant, and this caused considerable friction between Crawley, Boykin, and appellant.

On the night of the shooting, the three parties had several arguments. During one of the arguments, appellant expressed a desire to move out of the apartment and take all his belongings with him. According to appellant, Boykin refused to allow appellant to take his belongings back without a fight. After a short shoving match between appellant and Boykin, appellant obtained an empty revolver from a neighbor's apartment. He confronted Boykin with the empty revolver and told him that he wanted to retrieve his belongings. Boykin continued to argue and reached for the revolver, whereupon appellant retreated from the scene and left the apartment building. Subsequently, when appellant returned to the building, Boykin yelled down to appellant to "come on up here . . . . We got to get this settled once and for all." According to appellant, as he reached the top of the stairway leading to the apartment, Boykin appeared and told appellant, "I'm going to settle this once and for all. I'm going to kick your ass. You're not going to get nothing of it." Boykin then began to move toward appellant. Appellant stated that he stepped back, but Boykin "kept coming" and started to swing at appellant. When Boykin kept swinging, appellant

feared that he would be knocked down the stairway.[4] Appellant stated that he then "panicked" and pulled the revolver from his back pocket and shot Boykin.[5] Appellant testified on direct examination that he was "under a lot of strain" at that time, which stemmed in part from his concern over finding another place to live, as well as the manner in which he, Boykin and Crawley had been quarrelling so much with each other.

On cross-examination, appellant responded that the only reason he shot Boykin was self-defense. However, on redirect, appellant testified that at the time he pulled the trigger, he was feeling "kind of frustrated", because after all that he had done to provide for Boykin and Crawley, Boykin was now trying to "jump on" him. Appellant further indicated that at the moment he shot Boykin, appellant's thoughts went to why, after all the financial support that he had given to Boykin and Crawley, "they would do this to me, and now they don't want me to have the things that belong to me."

At the close of all the evidence at trial, the trial court agreed to give appellant's proferred jury instructions on self-defense. However, the trial court refused to give appellant's requested instructions on manslaughter.[6] The

---

[4] Appellant acknowledged on cross-examination that Boykin was intoxicated at that point in time. However, appellant's testimony was to the effect that he nevertheless regarded Boykin to be the stronger of the two. The Medical Examiner's testimony did indicate that Boykin was 6 ft. 1 in. in height. Appellant testified that he was 5 ft. 8 in. tall.

[5] Appellant had loaded the revolver after leaving the apartment building. He stated that he did this in anticipation of returning the gun to its owner.

[6] The instructions requested by appellant were the following:
Defendant's Requested Instruction No. 4 —
    When a person is charged with an offense, the jury may consider in its deliberations any offense that is lesser-included within the offense charged. The lesser-included offense in this case is manslaughter. Manslaughter is defined by the laws of this State, as intentionally or knowingly causing the death of another person, without justification, while under the influence of extreme mental or emotional disturbances for which there is a reasonable explanation.
Defendant's Requested Instruction No. 5 —
    In considering whether the defendant is guilty of manslaughter, rather

jury thereupon found appellant guilty as charged. Appellant contends that although the jury did not believe that he was justified in killing in self-defense, there was sufficient evidence to require the giving of instructions on manslaughter to the jury. We agree.

I

It was long ago held that in a prosecution for murder, where there is some substantial evidence, however weak and inconclusive it may appear to the trial court, that would tend to mitigate the homicide to manslaughter, it is error for the court to refuse to instruct the jury concerning manslaughter. *Territory v. Alcantara,* 24 Haw. 197 (1918). In *Territory v. Alcantara,* the trial court in a first degree murder prosecution refused to give to the jury the defendant's requested instruction covering the offense of manslaughter. The defendant's testimony in *Alcantara* was to the effect that he went out to find the victim (who was a female acquaintance of the defendant) who the defendant believed was in the company of another male. When the defendant found the victim and the male, the victim refused to talk to the defendant, and the male told the defendant that if the defendant did not leave the premises, he would kill the defendant. The male then attempted to stab the defendant, who took a knife himself and tried to stab the male. At that instant, the victim ran between the defendant and the male and was accidentally stabbed by

than murder, the reasonableness of the defendant's explanation of the extreme mental or emotional disturbances which influenced him shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be. It must be proven beyond a reasonable doubt that the defendant was not under the influence of extreme mental or emotional disturbances for which there is a reasonable explanation, or you cannot convict the defendant of murder.
Defendant's Requested Instruction No. 6 —
    As to facts which distinguish the crime from murder and make it manslaughter, the defendant is entitled to the benefit of a reasonable doubt on every proposition that the jury is to pass upon as a matter of fact. If the jury entertains a reasonable doubt as to which offense has been committed, murder or manslaughter, you must find the defendant guilty of manslaughter.

the defendant. Upon these facts, as set out by the defendant in his testimony, this court held that the requested instruction on manslaughter should have been given, and it reversed the conviction for first degree murder.

While *Alcantara* has continued to be the leading case in this jurisdiction, its requirement that there be "substantial evidence" in order to justify the giving of instructions on manslaughter has been relaxed by subsequent decisions. *See State v. Irvin*, 53 Haw. 119, 121, 488 P.2d 327, 328 (1971), and *State v. Santiago*, 53 Haw. 254, 271-72, 492 P.2d 657, 667-68 (1971) (both cases deciding the necessity of jury instructions on self-defense). Currently, Hawaii adheres to the "any-evidence" standard, under which it is the duty of the trial court to instruct the jury on every defense or theory of defense having any support in the evidence. *State v. Chang*, 46 Haw. 22, 46-47, 374 P.2d 5, 18 (1962). Additionally, we note that the *Alcantara* decision was grounded largely upon the pronouncements of the United States Supreme Court in *Stevenson v. United States*, 162 U.S. 313 (1896). The *Stevenson* case itself held the following:

> The evidence as to manslaughter need not be uncontradicted or in any way conclusive upon the question; so long as there is some evidence upon the subject, the proper weight is for the jury to determine. If there were *any evidence* which tended to show such a state of facts as might bring the crime within the grade of manslaughter, it then became a proper question for the jury to say whether it showed that the crime was manslaughter instead of murder.

*Id.* at 314, *quoted in Territory v. Alcantara*, 24 Haw. at 204 (emphasis added).

We believe that the evidence in the instant case was sufficient to require the trial court to give appellant's requested instructions on manslaughter. Looking at the evidence in a light most favorable to appellant *(see State v. Santiago, supra*, 53 Haw. at 272, 492 P.2d at 668), there was sufficient evidence raising a jury question as to whether appellant committed manslaughter instead of murder. An

examination of appellant's requested instructions on man-
slaughter indicates that appellant was seeking to have the
jury decide the question of whether he had been "under the
influence of extreme mental or emotional disturbance" at the
time he shot the victim.[7] We regard the testimony of appel-
lant as having fairly raised the issue of whether he had been
subject to such extreme mental or emotional disturbance at
the time he shot Thomas Boykin.

We have set out appellant's testimony in some detail in
order to depict the circumstances which may have contri-
buted to a disturbed state of mind on the part of appellant.
Although on cross-examination appellant denied having been
angry or upset with Boykin when he shot him, other portions
of his testimony on direct and redirect examination are to the
contrary. At the least, the conflict in appellant's testimony as
to his state of mind at the time of the shooting presented a
question for the jury to resolve. When there is any evidence,
no matter how slight, that raises the question whether the
offense is murder or manslaughter, the trial court is bound to
submit the issue to the jury for its determination. *Phillips v.
State*, 238 Ga. 497, 499, 233 S.E.2d 758, 760 (1977); *Gonzales
v. State*, 546 S.W.2d 617, 618 (Tex.Crim. 1977); *People v.
Jacobs*, 44 Ill.App.3d 290, 292, 357 N.E.2d 821, 824 (1976). By
ruling that the evidence in this case did not, "as a matter of
law", present any question regarding manslaughter, the trial
court "passed upon the strength, credibility and tendency of
the evidence", and it decided what would normally be a
question of fact. *Stevenson v. United States*, 162 U.S. at 315,
*quoted in Alcantara*, 24 Haw. at 205.

Finally, while it is true that appellant relied mainly on a
theory of self-defense at trial, this constituted no bar to the

---

[7] These instructions encompass the manslaughter definition outlined in HRS §
707-702(2) (Special Pamphlet), which provides as follows:
    In a prosecution for murder it is a defense, which reduces the offense to
    manslaughter, that the defendant was, at the time he caused the death of the
    other person, under the influence of extreme mental or emotional disturbance for
    which there is a reasonable explanation. The reasonableness of the explanation
    shall be determined from the viewpoint of a person in the defendant's situation
    under the circumstances as he believed them to be.

presentation to the jury of instructions on the theory of manslaughter. So long as the testimony fairly raises the issue of manslaughter, it is irrelevant that that issue was not explicitly offered as a defense theory during the trial. *See State v. Irvin, supra,* 53 Haw. at 121, 488 P.2d at 328 (1971), and *State v. Ramos,* 108 Ariz. 36, 38, 492 P.2d 697, 699 (1972).

We find that the evidence, taken in a light most favorable to the appellant, adequately raised a question as to whether the offense charged should have been manslaughter instead of murder, and the trial court was bound, irrespective of the theories pursued by the defense at trial, to instruct the jury on the manslaughter offense.

## II

Although we have proceeded with this extended discussion of the issue presented, we nevertheless find ourselves somewhat less than satisfied with the necessity of carrying out case-by-case fact-finding in order to determine whether instructions on manslaughter should also have been given when the issue of self-defense has been presented in a murder prosecution. After considerable thought, we have become convinced that the approach taken in this regard by the Court of Criminal Appeals of Oklahoma is the better one. That court has held that whenever the evidence warrants the giving of jury instructions on self-defense in a murder prosecution, the trial court must fully instruct upon manslaughter as well. *Morgan v. State,* 536 P.2d 952 (Okla.Crim. 1975).[8] In *Morgan v. State,* the court reasoned that since "some degree" of fear or anger must exist in every murder prosecution in which self-defense is an issue, the better practice is to require that instructions on manslaughter be given automatically as well, thereby allowing the jury to determine the sufficiency of the evidence relating to manslaughter. *Id.* at 956.

---

[8] *Morgan v. State* was most recently followed in *Farmer v. State,* 565 P.2d 1068 (Okla.Crim. 1977).

As was recognized in *Morgan,* the majority rule is, of course, that jury instructions on manslaughter need not necessarily be given whenever instructions on self-defense are given. We agree with the *Morgan* view that this traditional approach has often left trial courts in doubt as to when the instructions on manslaughter should be given, and has required appellate courts to undertake fact-finding in order to decide the need for such instructions. Appellant Warner's case is a prime example supporting this observation.

It seems that a more even-footed approach would be to adopt a rule such as the one set down in *Morgan.* It requires no lengthy analysis on our part to conclude, as did the court in *Morgan,* that elements of manslaughter are present to at least some degree in cases where self-defense is reflected in the evidence. Simply put, actions taken in self-defense may indeed be committed while the defendant is subject to a certain degree of terror, resentment, rage or anger, which in turn may be of sufficient magnitude to constitute the "extreme mental or emotional disturbance" which would reduce murder to manslaughter.[9] The traditional approach has caused much uncertainty and has "thrust the courts into a fact-finding process more properly reserved for the jury." *Morgan,* 536 P.2d at 956. We are thus persuaded by the soundness of the Oklahoma rule.[10] We hereby adopt it as the rule in Hawaii, subject to one exception.

---

[9] Under HRS § 707-702(2) (Special Pamphlet), murder may be reduced to manslaughter "when mitigating mental or emotional disturbances are present." Commentary on HRS § 707-702(2) (Special Pamphlet). HRS § 707-702(2) (Special Pamphlet) does not represent a radical departure from previous Hawaii law, which provided for reduction from murder to manslaughter when the killing was committed in the "heat of passion". This formulation has been a part of the common law of Hawaii since 1853, and somewhat approximates the "more general approach to mental and emotional extenuation" taken under HRS § 707-702(2) (Special Pamphlet). Commentary on HRS § 707-702 (Special Pamphlet).

[10] The Supreme Court of New Mexico similarly espouses the view that evidence requiring submission to the jury of instructions on self-defense will ordinarily call for instructions on manslaughter as well. *State v. Plummer,* 44 N.M. 614, 107 P.2d 319 (1940); *State v. Simpson,* 39 N.M. 271, 46 P.2d 49 (1935); *see State v. Lopez,* 79 N.M. 282, 442 P.2d 594 (1968). For a further discussion of these New Mexico cases, see *Morgan,* 536 P.2d at 957-59.

Therefore, we hold that in all murder prosecutions hereafter tried in this state, where the evidence necessitates an instruction on self-defense, the trial court shall also give instructions to the jury on the charge of manslaughter. The manslaughter instructions need not be requested by the defendant. However, the sole exception to this rule shall be that if the defendant objects to the giving of the instructions of manslaughter on the basis that the record does not reflect any evidence on this issue, and the trial court agrees with the defendant, no such manslaughter instructions shall be given.

We set forth this rule for prospective application only. Hence, the instant case has of necessity been decided under the traditional approach to this question. However, the result under both approaches would be the same here. We conclude, therefore, that the court below prejudicially erred in refusing to give appellant's requested jury instructions 4 through 6 on the offense of manslaughter.

Reversed and remanded for new trial.

*Marie N. Milks*, Deputy Public Defender, for defendant-appellant.

*Archibald Kaolulo*, Deputy Prosecuting Attorney, City & County of Honolulu, *(Winston K. Q. Wong*, Deputy Prosecuting Attorney, on the brief), for plaintiff-appellee.