**STATE OF HAWAIʻI**, Plaintiff–Appellee, v. **CLYDE PINERO**, Defendant–Appellant

NO. 15881

(CR. NO. 87–0711)

OCTOBER 18, 1993

LUM, C.J.,* MOON, KLEIN, LEVINSON, JJ.,
AND INTERMEDIATE COURT OF APPEALS
ASSOCIATE JUDGE HEEN, ASSIGNED
BY REASON OF VACANCY

---

*Chief Justice Lum, who heard oral argument, retired from the court on March 31, 1993. *See* HRS § 602–10 (1985).

284

## OPINION OF THE COURT BY KLEIN, J.

Defendant–appellant Clyde Pinero appeals a first circuit court judgment convicting him of Murder in the First Degree in violation of Hawai'i Revised Statutes (HRS) § 707–701(1)(b) (Supp. 1992)[1] for the murder of Honolulu police officer David Ronk. Pinero was initially charged, tried, and convicted on two counts: 1) Possession of a Firearm by a Person Convicted of Certain Crimes in violation of HRS § 134–7 (1985); and 2) Murder in the First Degree. The convictions arising out of the first trial were vacated and the case remanded for a new trial in *State v. Pinero*, 70 Haw. 509, 778 P.2d 704 (1989). Upon remand, Pinero's second trial resulted in a hung jury as to Murder in the First Degree but a conviction as to the offense of Possession of a Firearm. A third jury trial ensued on the undetermined count, resulting in Pinero's conviction of the offense of Murder in the First Degree, the substance of which we now review.

## FACTS

The facts elicited at Pinero's third trial were substantially the same as those from the first trial:

> The chain of events leading to the death of Ronk, an officer of the Honolulu Police Department, began on June 14, 1987 when he and two fellow officers went to Pinero's residence to serve him with [arrest warrants and other court docu-

---

[1] HRS § 707–701(1)(b) provides that "[a] person commits the offense of murder in the first degree if the person intentionally or knowingly causes the death of . . . [a] peace officer, judge, or prosecutor arising out of the performance of official duties."

ments] issued by the [Circuit Court of the First Circuit]. Ronk could not serve the [documents] because Pinero apparently saw the officers as they approached the front door of the house and left through the back door. Ronk and three other officers, Dwayne Takayama, Eric Kanda, and Eli Walters, attempted to serve the court [documents] again on the following day. But this time, two officers guarded the rear of the house and another guarded the front while Ronk approached the front door.

Takayama testified at trial that Ronk first spoke to Pinero's mother at the door and then entered the house, followed by Takayama. When asked whether her son was there, the mother replied he was not. Ronk sought and received permission from her to look around the house. He checked the hall closet, then proceeded to the bedrooms. Shortly after Ronk entered the second bedroom, Takayama heard sounds of a scuffle. Takayama ran to the bedroom and saw Ronk grappling with Pinero. The object of the struggle was the service revolver that the defendant had somehow snatched from the officer. Ronk had his arms around Pinero and was trying to pin the latter's arms down. The gun in Pinero's hand was pointing in the direction of the door so Takayama stepped back momentarily. A shot rang out; Takayama rushed into the bedroom with the other officers, who by then had entered the house through the back door. Ronk had been shot; he died shortly thereafter. The three officers subdued Pinero, handcuffed him, and placed him under arrest.

*Pinero*, 70 Haw. at 513–14, 778 P.2d at 708 (footnote omitted).

Pinero did not testify at the third trial. The defense attorney argued that Pinero was guilty of manslaughter rather than first degree murder because Pinero's state of mind with respect to causing the death of Ronk either arose from extreme emotional distress caused by Ronk's actions, or was reckless rather than intentional or knowing.[2]

The issues on appeal concern: 1) excluded cross–examination testimony of a police officer; 2) a mistyped jury instruction; 3) an instruction allegedly failing to correctly state the law regarding First Degree Murder of a police officer; and 4) instructions on the issue of self–defense given over defense counsel's objections. For the reasons set forth below, we affirm the judgment of the circuit court.

## DISCUSSION
### 1. Admissibility of evidence

During the cross–examination of Eli Walters, a police officer involved in the incident, the prosecutor objected to defense counsel's attempt to question Walters about a

---

[2] HRS § 707–702(1)(a) (1985) provides that "[a] person commits the offense of manslaughter if . . . [h]e recklessly causes the death of another person." HRS § 707–702(2) (Supp. 1992) provides:

In a prosecution for murder in the first and second degrees it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

conversation between Walters and Ronk immediately prior to Ronk's attempt to serve the court documents at Pinero's home. Defense counsel's offer of proof was that he expected Walters to testify that the police lacked a search warrant and that Ronk would only attempt an arrest if Pinero came to the door or Ronk was given consent to enter. Defense counsel asserted that the evidence would tend to show that Ronk was not "in the performance of official duties," an element of the offense of first degree murder.

The judge sustained the objection to the question regarding the conversation between Walters and Ronk on the ground that the testimony was inadmissible under Hawai'i Rules of Evidence (HRE) Rule 403.[3] The judge ruled that although the testimony concerning the existence of a search warrant may have been relevant as to whether Ronk was on "official business," allowing defense counsel to pursue this line of questioning would be "misleading, confusing, and take[] up too much time," because the officers were at Pinero's residence (1) to serve a temporary restraining order, the existence of which was excluded from mention at trial by a prior court order, and (2) to arrest him, indisputably official business.

The trial court's decision concerning the admissibility of evidence is subject to different standards of review:

> [D]ifferent standards of review must be applied
> to trial court decisions regarding the admissibility
> of evidence, depending on the requirements of

---

[3] HRE Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. *Kealoha v. County of Hawai'i*, 74 Haw. 308, 319, 844 P.2d 670, 676, *reconsideration denied*, 74 Haw. 650, 847 P.2d 263 (1993). In *Kealoha*, the trial court excluded evidence that an injured motorcyclist had failed to wear a helmet because the motorcyclist had no duty to wear one. We held:

> Implicit in the trial court's refusal to admit the proffered evidence was a finding that Kealoha's failure to wear a helmet was simply not relevant under HRE 401 and therefore must be excluded under HRE 402. Based on the foregoing discussion, the trial court's refusal to admit evidence of Kealoha's non–use of a helmet must be reviewed under the right/wrong standard of review.

*Kealoha*, 74 Haw. at 320, 844 P.2d at 676; *see also State v. Kelekolio*, 74 Haw. 479, 521–22 n.19, 849 P.2d 58, 77 n.19 (1993). The ruling as to the admissibility of Walter's testimony based on relevancy is similarly reviewed under the right/wrong standard.

The existence of a search warrant in the instant case was not relevant to the issue of whether Ronk's murder arose out of "the performance of official duties," for the purposes of the first degree murder statute, HRS § 707–701. The question is not whether Ronk was performing his duties properly, but whether Pinero believed that Ronk's actions were prompted by his official duties. During the trial, no one suggested that Pinero believed that the officers were at his home for other than official police business. Thus, evidence concerning a search warrant was inadmissible as irrelevant under HRE Rule

402 which provides that "[e]vidence which is not relevant is not admissible." Although the trial court unnecessarily based its ruling on HRE Rule 403, because it properly limited the cross–examination of Walters, its decision will be upheld. *See State v. Taniguchi*, 72 Haw. 235, 240, 815 P.2d 24, 26 (1991) (where decision below was correct it must be affirmed by appellate court even though lower tribunal gave wrong reason for its action).

### 2. **Mistyped instruction**

Pinero next claims that jury instruction number 26 omitted, due to a typographical error, information regarding reckless manslaughter. Instruction number 26 should have provided the emphasized language:

> If you find the defendant acted in self–defense, then you must find him not guilty. If you find he did not act in self–defense, then you must find him guilty of either Murder in the First Degree or Manslaughter, (due to extreme mental or emotional disturbance for which there is a reasonable explanation), *or manslaughter based on reckless conduct*, depending on your determination of his state of mind.

The instruction as read and provided to the jury in writing for their deliberation omitted the clause concerning reckless manslaughter. Without the emphasized language, instruction number 26 was incomplete and failed to adequately inform the jury that they could find the defendant guilty of Manslaughter in two different ways. Pinero claims that he was prejudiced by this omission because had the jury wished to exercise leniency on Pinero's behalf, it was precluded from considering reckless manslaughter as a conviction option. The omission went

unnoticed during the trial and Pinero raises it for the first time on appeal.

Ordinarily, instructions to which no objection was made at trial may not be raised as error on appeal. Hawai'i Rules of Penal Procedure (HRPP) Rule 30(e).[4] An appellate court may presume that an instruction correctly stated the law if no objection to the allegedly erroneous instruction was made at trial. In *State v. McNulty*, 60 Haw. 259, 266, 588 P.2d 438, 444 (1978), *cert. denied*, 441 U.S. 961 (1979), we held that:

> appellant would have been entitled, upon proper request, to have the trial court specifically instruct the jury that the prosecution's burden of persuasion included proving that appellant had not acted in self–defense at the time of the alleged crime. However, because he failed to object at trial, appellant is now precluded from raising the failure of the court to give such an instruction as a ground for reversal on appeal, and the court's general burden of proof instruction will be deemed sufficient to cover the issue of self–defense.

---

[4] HRPP Rule 30(e) provides in pertinent part that "[n]o party may assign as error the giving or refusal to give, or the modification of, an instruction, . . . , unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.*" (emphasis added). Even where an instruction was objected to at trial, if the grounds of error urged on appeal were not made in support of the objection below, we will not overturn the trial court absent plain error. *See State v. Okamura*, 63 Haw. 342, 344, 627 P.2d 282, 283 (1981). In the instant case, appellant only objected to instruction number 26 on the ground that it instructed the jury concerning self–defense, *see* discussion paragraph 4, *infra*. Because the omission of the reckless manslaughter option was not urged as a ground of error below we will treat the instruction as free from objection for purposes of this discussion.

Where an erroneous instruction affected the substantial rights of a defendant, however, we *may* notice the error as "plain error" and remand for corrective action. HRPP Rule 52(b); *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993); *State v. Agrabante*, 73 Haw. 179, 184, 830 P.2d 492, 495 (1992); *State v. Fox*, 70 Haw. 46, 55–57, 760 P.2d 670, 675–76 (1988). Although we review Pinero's complaint that the typographical omission rendered the jury instruction misleading, we conclude that the trial court did not commit "plain error" because the omission did not prejudice Pinero.

> In determining the sufficiency of a particular instruction, or part of a charge, it is not to be considered apart from its context, or the rest of the charge. Both in civil and in criminal cases the instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. The omissions or inaccuracies of one instruction may be cured by the contents of the other instructions, or some of them, and if, when the instructions of the court are considered as a whole, they correctly state the law and are not inconsistent or misleading, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal.

*State v. Travis*, 45 Haw. 435, 438, 368 P.2d 883, 886 (1962) (quoting *Ciacci v. Woolley*, 33 Haw. 247, 261–62 (1934)). Where instructions were not objected to at trial, if the appellant overcomes the presumption that the instructions correctly stated the law, the rule is that such " '[e]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudi-

cial.'" ***Pinero***, 70 Haw. at 527, 778 P.2d at 716 (quoting ***Turner v. Willis***, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978) (trial court neglected to inform jury about mental element of one of the crimes for which defendant could have been found guilty)); ***State v. Napeahi***, 57 Haw. 365, 556 P.2d 569 (1976) (instruction taking question of fact away from jury was clearly prejudicial and not cured by another instruction which, although correctly stating law concerning that question of fact, did not call attention to erroneous instruction). In the instant case, even assuming that instruction number 26 incorrectly stated the law, the instructions, verdict forms, and the record as a whole show that Pinero was not prejudiced by the erroneous instruction.

The instructions given before and after instruction number 26 clearly informed the jury that it was obligated to consider the elements of reckless manslaughter (instructions 21, 23, and 30) and that a separate count of manslaughter had to be considered apart from manslaughter based on emotional distress. The judge's instructions to the jury as to the elements of the crimes for which Pinero could possibly be convicted were in pertinent part:

[Instruction No. 16]

The Defendant is charged with the offense of Murder in the First Degree.

A person commits Murder in the First Degree if he intentionally or knowingly causes the death of a peace officer arising out of the performance of official duties.

There are four elements to this offense, each of which must be proven by the prosecution beyond a reasonable doubt.

These four elements are:

1. The Defendant intentionally or knowingly caused the death of David Ronk.

2. David Ronk's death arose out of the performance of his official duties as a police officer. A police officer is a peace officer under the law.

3. The Defendant knew that David Ronk was a police officer.

4. The Defendant's conduct was not justifiable as self defense.

. . . .

[Instruction No. 21 (part)]

If you are not convinced beyond a reasonable doubt that the defendant is guilty of Murder in the First Degree, or Manslaughter based upon extreme mental or emotional disturbance or you are unable to reach a unanimous verdict as to these offenses, then you must determine whether the defendant is guilty or not guilty of the offense of manslaughter based upon reckless conduct.

A person commits the offense of manslaughter based upon reckless conduct if he recklessly causes the death of another person.

There are two material elements of this offense, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That the defendant caused the death of David Ronk; and

2. That the defendant did so recklessly.

The prosecution must prove beyond a reasonable doubt that the defendant caused the death of David Ronk and that he did so recklessly. If the prosecution has done so, then you must return the verdict of guilty of Manslaughter based upon

reckless conduct. If the prosecution has not done so, then you must return a verdict of not guilty.

. . . .

[Instruction No. 23 (part)]

In order to find the defendant guilty of Murder in the First Degree or Manslaughter (due to extreme mental or emotional disturbance) or reckless Manslaughter, you must determine whether or not the defense of Self Defense applies.

. . . .

[Instruction No. 26 (part)]

If you find that the Defendant acted in Self Defense, then you must find him Not Guilty. If you find he did not act in Self Defense, then you must find him guilty of either Murder in the First Degree or Manslaughter (due to extreme mental or emotional disturbance for which there is a reasonable explanation), depending on your determination of his state of mind.

. . . .

[Instruction No. 30 (part)]

You may bring in either one of the following verdicts:

1. Guilty as charged; or

2. Guilty of the reduced offense of Manslaughter; (due to extreme mental or emotional disturbance) or;

3. Guilty of the lesser–included offense of Manslaughter; or

4. Not Guilty.

In addition to the above instructions, the jury was provided with four verdict forms from which to select. The

verdict forms made clear that the jury could consider reckless manslaughter as an option. *See **State v. Lincoln**, 3 Haw. App. 107, 122, 643 P.2d 807, 818 (1982) (court looked to verdict forms to resolve alleged inconsistency in jury instructions and resulting verdicts). The four verdict forms stated in pertinent part:

1. WE, the JURY in the above–entitled cause, find the Defendant GUILTY as charged.

2. WE, the JURY in the above–entitled cause, find the Defendant GUILTY of the reduced offense of Manslaughter. (Due to extreme mental or emotional disturbance.)

3. WE, the JURY in the above–entitled cause, find the Defendant GUILTY of the lesser–included offense of Manslaughter (Reckless).

4. WE, the JURY in the above–entitled cause, find the Defendant NOT GUILTY.

From these verdict choices, the jury signed and dated form number one containing the language set forth above.

Moreover, both the defense counsel and the prosecutor made clear throughout the trial that separate means of proving manslaughter existed and that a reckless state of mind was required to prove one of those means.[5] Accordingly, the trial court did not commit plain error as a result of the typographical omission in instruction number 26

---

[5] Defense counsel stated at the end of his closing argument, "I said that this was a case of manslaughter. And whether you choose to call it emotional disturbance manslaughter, or whether you call it manslaughter based on reckless conduct, it is still manslaughter." The prosecutor in his closing remarks reiterated the distinction, "[t]he question is at the time of the shot, was it intentional, knowingly or was it reckless. Now those are — they take two distinct sets of mind, whether it's murder or the two manslaughter[s]."

because the instructions as a whole, the verdict forms, and the other information before the jury were sufficient to provide it with the option of finding Pinero guilty of reckless manslaughter as opposed to murder in the first degree. *See Travis*, 45 Haw. at 437, 368 P.2d at 886 (after scrutinizing the entire record, court found no indication that the jury could have been misled by an isolated, erroneous instruction); *People v. Morris*, 53 Cal. 3d 152, 227–32, 807 P.2d 949, 995–98, 279 Cal. Rptr. 720, 766–69, *cert. denied*, ___ U.S. ___, 112 S. Ct. 421 (1991) (mistyped jury instruction incorrectly stating law was not prejudicial when other instructions and information at trial correctly presented law to the extent that jury could not have been misled).

### 3. **Arising out of the performance of official duties**

Pinero next alleges error in the court's instruction on first degree murder. According to HRS § 707–701(1)(b), "[a] person commits the offense of murder in the first degree if the person intentionally or knowingly causes the death of [a] peace officer, judge, or prosecutor arising out of the performance of official duties[.]" As we have noted, instruction number 16 provided in pertinent part:

> There are four elements to this offense [Murder in the First Degree], each of which must be proven by the prosecution beyond a reasonable doubt.
>
> These four elements are:
>
> 1. The Defendant intentionally or knowingly caused the death of David Ronk.

2. David Ronk's death arose out of the performance of his official duties as a peace officer. A police officer is a peace officer under the law.

3. The Defendant knew that David Ronk was a police officer.

4. The Defendant's conduct was not justifiable as self defense.

Pinero argues that the instruction was incomplete with respect to the "arising out of the performance of official duties" element of the offense. Because Pinero did not object to the instruction of this ground below, his conviction will not be vacated unless we notice "plain error" meriting reversal. *See* footnote number 4 and accompanying text, *supra*. Upon review of Pinero's claim and the record below, we conclude that the trial court did not commit "plain error" because Pinero's substantial rights were not affected by a deficiency in instruction number 16.

Pinero's argument that instruction number 16 was erroneous is based on the following propositions: (1) "arising out of the performance of official duties" is an element of first degree murder, in particular, an attendant circumstance; (2) establishing that the attendant circumstance existed requires proof that a peace officer was engaged in the performance of his or her official duties at the time of the offense; (3) HRS § 702–204 requires proof that the accused acted with the requisite state of mind with respect to the attendant circumstance; and (4) the state of mind that must be proved is the state of mind specified in the first degree murder statute, *i.e.*, "intentionally or knowingly." Thus, Pinero submits that instruction number 16 was defective because it failed to require proof that he knew that Ronk was engaged in the performance of official duties.

Although Pinero is correct that the phrase "arising out of the performance of official duties" defines an attendant circumstance, the existence of which must be proved beyond a reasonable doubt,[6] he misunderstands the nature of the attendant circumstance that must be proved. Establishing that the attendant circumstance existed does not require proof that the victim was engaged in the performance of official duties at the time of the commission of the offense. For example, if a person engages in conduct designed to cause the death of a police officer because of the officer's past, present, or expected performance of official duties, the person's conduct "arises out of the performance of official duties," even if the officer is off–duty and involved in a purely personal activity at the time. Moreover, the mere fact that an officer happens to be engaged in the performance of official duties is neither necessary nor sufficient to establish that the attendant circumstance existed. For example, if a person engages in conduct designed to cause the death of a police officer because of a personal vendetta completely unrelated to the officer's official duties, the person's conduct does not "arise out of the performance of official duties," even if the officer is on–duty and

---

[6] HRS § 702–205 (1985) provides in pertinent part:

**Elements of an offense.**

The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as [a]re specified by the definition of the offense[.]

"Arising out of the performance of official duties" is an element specified by the definition of the offense of first degree murder. HRS § 707–701(b). Because the element does not describe the conduct or a result of the conduct of a perpetrator, it is an attendant circumstance. As an element of the offense, HRS § 701–114(a) (1985) requires that it be proved beyond a reasonable doubt.

involved in the performance of official duties. Thus, establishing the existence of the attendant circumstance does not require proof that the officer was engaged in the performance of official duties, as Pinero contends, but requires proof that the accused engaged in the death causing conduct *because of* the officer's past, present, or expected performance of official duties.[7]

Despite Pinero's misapprehension of the meaning of "arising out of the performance of official duties," the remainder of his analysis is correct. HRS § 701–114 requires proof beyond a reasonable doubt of each element of the offense, as well as "[t]he state of mind required to establish each element of the offense." *See also* HRS § 702–204 (1985).[8] Pursuant to HRS §§ 702–207

---

[7] Prior to 1986, HRS § 706–606(a)(i) (1985), mandated the imposition of a sentence of life imprisonment without possibility of parole for the murder of "[a] peace officer *while in* the performance of his duties." (emphasis added). If this language were still operative, Pinero's assertion that first degree murder requires proof that the officer was engaged in the performance of his duties at the time of the offense would be correct. In 1986, however, the Hawai'i Penal Code was significantly amended. The amended Code defined two degrees of murder, incorporating the sentencing provisions of HRS § 706–606(a) (1985) into a new first degree murder statute, HRS § 707–701 (Supp. 1992). The provision at issue in the instant case, however, was not simply transferred to the first degree murder statute, but was itself amended in the process. The new provision applies to the murder of "[a] peace officer . . . *arising out of* the performance of official duties." (emphasis added). It is this language that we now interpret.

[8] HRS § 702–204 provides in pertinent part:

**State of mind required.**

Except as provided in section 702–212, a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to every element of the offense.

(1985) and 707–701, the state of mind required to establish the attendant circumstance of "arising out of the performance of official duties" is "intentionally or knowingly."[9] Thus, instruction number 16 was incomplete because it failed to require proof beyond a reasonable doubt that Pinero was aware of, believed, or hoped[10] that he caused Ronk's death because of Ronk's prior, ongoing, or expected performance of official duties.

Although instruction number 16 merely tracked the statutory language of HRS § 707–701(1)(b) by requiring proof beyond a reasonable doubt that Ronk's death "arose

---

[9] HRS § 702–207 provides:

**Specified state of mind applies to all elements.**

When the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears.

HRS § 707–701 specifies that either an intentional or knowing state of mind is a prerequisite to the commission of the offense of first degree murder without distinguishing among the elements of the offense, and no purpose to apply a different state of mind requirement to the attendant circumstance of "arising out of the performance of official duties" plainly appears.

[10] HRS § 702–206 defines the states of mind recognized by the penal code and provides in pertinent part:

**Definitions of states of mind.**

(1) "Intentionally."

\* \* \*

(b) A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes or hopes that they exist.

\* \* \*

(2) "Knowingly."

\* \* \*

(b) A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

out of the performance of his official duties," this defi-
ciency in the instruction did not affect Pinero's substantial
rights. When the record is viewed in light of the jury's
implicit findings that Pinero knew Ronk was a police
officer and, without justification or mitigation, inten-
tionally or knowingly caused his death, the inescapable
conclusion is that Pinero caused Ronk's death knowing
that he did so because of Ronk's performance of official
duties. Throughout the trial, from the opening state-
ments through the closing arguments, Pinero conceded
that at the time of the incident, he knew the police offic-
ers had arrived at his home, thought they were coming to
arrest him, and tried to avoid them.[11] Pinero's concessions
at trial concerning the point he now raises as "plain error"
effectively foreclose any argument that his rights were
substantially prejudiced by the erroneous instruction. *See*
***Burgess v. Arita***, 5 Haw. App. 581, 593–94, 704 P.2d 930,
939, *reconsideration denied*, 5 Haw. App. 682, 753 P.2d
253 (1985) ("where it is plain to the appellate court that
the record clearly reflects what the finding must be, the

---

[11] For example, defense counsel stated in his opening statement:

> This is what the evidence will show. When Officer Ronk
> arrived that morning, he came with three other police officers. . . .
> [Pinero's] mom told him what he already knew. She said Clyde, the
> police are here.

> The reason I say he already knew it is because he did not at
> that point try to run out that door. But she will tell you that he
> begged her, he said mom, help me hide from the police.

When Pinero presented his case, one of the witnesses called on
his behalf was his mother, Elizabeth Pinero. She testified that when
Ronk arrived at their home on the morning of the incident, she went
to the back room to tell her daughter–in–law, Debbie, that Ronk wanted
to speak with her. The defendant was in the back room at the time.
Defense counsel elicited the following testimony regarding the defen-
dant's subsequent actions and state of mind:

court may elect to decide the appeal without further find-
ings"). Pinero has thus failed to demonstrate that his sub-
stantial rights were affected by the court's failure to prop-
erly instruct on this issue and, therefore, we conclude that
the trial court did not commit plain error.

### 4. **Self–defense instructions**

Lastly, Pinero argues that his right to a fair trial was
prejudiced when the court, at the prosecution's request,
instructed the jury concerning self–defense. Pinero
objected to the instructions because he maintained that
self–defense was not part of his theory of the case. Thus,
Pinero argues that, because of the instructions, the jury
may have been distracted from his "manslaughter" theory
of the case, or become alienated believing that Pinero
was trying to exonerate himself from culpability for caus-
ing Ronk's death. The circumstances surrounding the
struggle between Pinero and Ronk, however, fairly raised
the issue of self–defense. When pressed by the court to

---

[DEFENSE COUNSEL] Q: And what happened after [Debbie] left
the room between yourself and your son, Clyde?

[PINERO'S MOTHER] A: My son, Clyde, he looked at me and said,
"Ma, help me." And I helped him hide.

Q: Hide where?

A: In one box in the closet.

Q: Can you describe how he looked when he asked you to do that?

A: He didn't know what, where to turn. He was scared and every-
thing. He didn't know what to do or anything

In closing argument, defense counsel observed:

Now, being sent to jail was [Pinero's] only concern on June 15th
of 1987. And this case would never have come to court, we wouldn't
be here today, [Pinero] wouldn't be here and Officer Ronk would
still be alive, because you see, when he got away on June 14th, the
day before, he already knew the police were going to come looking
for him again.

eliminate any ambiguity in his position, Pinero refused to stipulate that self–defense was not at issue in the case.[12] This issue's resolution thus depends upon the scope of the trial court's discretion to instruct the jury regarding self–defense.

Our precedent establishes that a "defendant 'is entitled to an instruction on every defense or theory of defense having *any* support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive or unsatisfactory the evidence may be.' " *Pinero*, 70 Haw. at 525, 778 P.2d at 715 (quoting *State v. O'Daniel*, 62 Haw. 518, 527–28, 616 P.2d 1383, 1390 (1980)) (emphasis in original); *State v. Unea*, 60 Haw. 504, 591 P.2d 615 (1979). In other words, "Hawaii adheres to the 'any–evidence' standard, under which it is the duty of the trial court to instruct the jury on every defense or theory of defense having any support in the evidence." *State v. Warner*, 58 Haw. 492, 497, 573 P.2d 959, 962 (1977); *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971); *cf. State v. Russo*, 69 Haw. 72, 734 P.2d 156 (1987) (where evidentiary support for the asserted defense, or for any of its essential components, is clearly lacking, it would not

---

[12] The transcript reveals the following dialogue:

THE COURT: Is the defense's position that the defendant is conceding that there is no issue of self–defense?

[DEFENSE COUNSEL]: No, we're not — that's not our position. Our position is that if they — even if the evidence does raise that, we are not conceding it.

THE COURT: You will not stipulate on the record before the jury with the prosecution that self defense is not to be considered by the jury?

[DEFENSE COUNSEL]: No.

be error for the trial court either to refuse to charge on the issue or to instruct the jury not to consider it). The factual circumstances underlying our precedent, however, make clear that the court's "duty" is only prompted by a requested instruction. *Pinero*; *O'Daniel* (and cases cited therein). Although all of our cases in this area have dealt with situations in which defendants requested self-defense instructions, no rule of law prevents the prosecution from making a proper request. A proper request having been made in the instant case, we must decide whether the defense is entitled to prevent the giving of accurate self-defense instructions.

In a similar situation, we have held that in every prosecution for murder where a self-defense instruction is required, the trial court is obligated to provide instructions, *sua sponte*, on the mitigating defense of manslaughter.[13] *Warner*, 58 Haw. at 500, 573 P.2d at 964. The sole exception to the *Warner* rule occurs if "the defendant objects to the giving of the instructions of manslaughter on the basis that the record does not reflect any evidence on this issue, and the trial court agrees with the defendant[; then] no such instruction shall be given." *Warner*, 58 Haw. at 501, 573 P.2d at 964–65. A comparable exception is applicable when self-defense instructions are requested by the prosecution. Accordingly, self-defense instructions requested by the prosecution should be given unless the defendant objects to the giving of the instructions on the basis that the record does not reflect any evidence on this issue and the trial court

---

[13] In the instant appeal we need not reach the issue of whether a trial court is required to provide self-defense instructions, *sua sponte*, whenever supported by the evidence.

agrees with the defendant.[14] In the instant case, the trial court considered the evidence as fairly presenting grounds for instructions on self–defense and, therefore, it was not error for the trial court to include the self–defense instructions.

## CONCLUSION

The trial court properly excluded irrelevant evidence and gave sufficient instructions to the jury for it to convict Pinero of Murder in the First Degree for causing the death of Officer Ronk. Accordingly, the judgment of the trial court is affirmed.

*Edward K. Harada*, Deputy Public Defender, for defendant–appellant.

*Caroline M. Mee*, Deputy Prosecuting Attorney, for plaintiff–appellee.

---

[14] In an appropriate case, a defendant could prevent the giving of self–defense instructions even where there is evidence on the issue, if the defendant is willing to stipulate that self–defense is not an issue and the jury is instructed not to consider self–defense. If, however, the defendant is not willing to so stipulate, as in the instant case, and the prosecution requests that self–defense instructions be given based on evidence in the record, then the jury is entitled to be properly instructed on the law of self–defense.