**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **WALTER KUPAU, JR.**, Defendant–Appellant

NO. 15885

(CR. NO. 90–1019)

FEBRUARY 4, 1994

WATANABE, J., CIRCUIT JUDGE CRANDALL, IN PLACE OF BURNS, C.J., RECUSED, AND CIRCUIT JUDGE SHIMABUKURO, IN PLACE OF HEEN, J., RECUSED

504

## OPINION OF THE COURT BY WATANABE, J.

In this appeal, Defendant–Appellant Walter Kupau, Jr. (Defendant) contends that his jury conviction of Assault in the Second Degree should be reversed for two reasons: first, the trial court committed plain error when it failed, *sua sponte*, to instruct the jury on the lesser included offense (LIO) of Assault in the Third Degree; and second, the conduct of Defendant's trial counsel deprived Defendant of his constitutional right to effective assistance of counsel.

We agree that the trial court plainly erred when it failed *sua sponte* to give the LIO instruction. We accordingly vacate the judgment below and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

As a result of a September 6, 1988 incident in which James Rockwell (Rockwell), a water plant operator at the Public Works Center, Pearl Harbor Naval Base, was allegedly beaten by Defendant, a grand jury indicted Defendant for having committed the offense of Assault in the Second Degree, a violation of Hawai'i Revised Statutes (HRS) § 707–711(1)(a) (Supp. 1992).

The evidence at trial revealed that when Rockwell reported to work on September 6, 1988, he filed "some grievances" with his acting supervisor, David Sax (Sax), concerning "criminal activities that were going on as well as fraud . . . [o]n the part of management of the water plant." Transcript (Tr.) 10/21/91 at 8–9. Rockwell also filed a separate grievance, in which he complained about the job performance evaluation he had received from Sax, as well as on–the–job harassment by Sax. *Id.* at 9.

That evening at about 9:00 p.m., Rockwell telephoned Robert Meyer (Meyer), his immediate supervisor, to inform Meyer of the grievances he had filed. Rockwell claims that he was invited to Meyer's home in Nuʻuanu to discuss the matter and arrived there at around 10:00 p.m.

Once inside Meyer's home, Rockwell began to explain why he had filed the grievances. However, instead of discussing the grievances, Meyer turned the subject to Rockwell's previous allegations regarding criminal wrongdoing, which were already being investigated by the Naval Investigation Service (NIS). Meyer warned Rockwell that he was in "deep trouble" if he had revealed certain information to the NIS authorities. *Id.* at 16.

Meyer then suggested that the two of them go outside to talk about the matter further. According to Rockwell:

> [A]s soon as [Meyer] opened the door to the porch I was grabbed by [Defendant] under my — [Defendant] was on my right side of the porch and another gentleman on the left too, grabbed both me under my armpits.
>
> They drug [sic] me down this hill of the concrete porch down the sidewalk basically through the little picket gate which ripped open my jeans, threw me down on the McGrew Lane where it's paved and [Defendant] started pounding my head into the pavement and beating the side of my head and my ribs.
>
> \* \* \*
>
> He was beating my head on the pavement. He said, "I hear you are giving trouble at work and you are messing with the wrong people." These are the only statements that were made really.

*Id.* at 16–17.

Rockwell testified that the actual assault lasted "at the most five minutes," and that as soon as the beating ceased, he went straight to his car and drove away. *Id.* at 21–22. He was "pretty disoriented" and "shook up" because he was bleeding from his head and blood was flowing down his face. *Id.* at 22. He headed for his home in Waipahu but decided instead to go to the home of David Cain (Cain), a co–worker who lived near him. Rockwell told Cain what had happened to him[1] and asked Cain to drive him to the hospital. However, because Cain was babysitting his children and could not leave them alone, he was unable to drive Rockwell. Cain offered to summon an ambulance, but Rockwell declined the offer.

Rockwell eventually found a ride to Kaiser Hospital in Moanalua, where he arrived at approximately 1:00 the next morning. While there, he was interviewed by a police officer who had been summoned by hospital staff, and was then treated and released.

At trial, the medical records of Kaiser Hospital relating to the injuries sustained by Rockwell were introduced into evidence by stipulation of the parties. The records clearly indicate that Rockwell suffered from: (1) a one–inch laceration to the left side of his head, for which he received three stitches; (2) two hematomas (i.e., bruise or blood clot) to his head; and (3) a sprained left wrist. Record on Appeal (R.A.) at 153. The medical records also contain several entries by various physicians, suggesting that Rockwell may have sustained a fracture to his left

---

[1] At trial, Cain verified that he had been told by Rockwell that two men had assaulted Rockwell. Cain also stated that when Rockwell arrived, he seemed "upset and excited" and he "looked pretty roughed up . . . [and] his head was bleeding." Transcript (Tr.) 10/21/91 at 74–78.

third or ninth rib as a result of the alleged beating. Dr. Peter Clapp, a radiologist, took an x-ray of Rockwell on September 7, 1988, and thereafter noted that "[t]here is a mild cortical [i.e., outer layer] irregularity involving the anterior end of the left 9th rib which may possibly represent a nondisplaced fracture." R.A. at 154. Dr. D. Intaraprasong, another radiologist, took a second x-ray on September 21, 1988, and concluded that "[t]here is no definite fracture identified at the left 9th rib," but there is a "[p]ossible fracture, either new or old at lateral aspect of left 3rd rib." R.A. at 162.

At trial, Defendant did not contest the nature of Rockwell's injuries, but offered evidence that the injuries were inflicted in self-defense.

Meyer testified that when Rockwell arrived at Meyer's house on the evening in question, Rockwell began accusing Meyer of being the "ring leader" of a group that was supposedly stealing government property. Tr. 10/22/91 at 37. Meyer claims that Rockwell then "went over the handle, he just blew up" and started yelling that he would "get [Meyer]" and "get everybody." Id. at 38. Defendant, who was Meyer's neighbor, overheard Rockwell screaming at Meyer and telephoned Meyer to offer to call the police. When Meyer declined assistance and said he would handle the matter, Defendant informed Meyer that Defendant would be on his porch if Meyer changed his mind. Meyer subsequently led Rockwell out to Meyer's porch, a scuffle ensued between them, and Meyer called for Defendant's help.

Both Meyer and Defendant testified that Rockwell was holding a beer bottle, and when Defendant ran over to Meyer's house, "Rockwell raised his hand with the beer bottle." Id. at 39, 96. According to Defendant:

I thought he was going to hit him so I hit him.

\* \* \*

When Rockwell — well, I went go for hit because I thought he's going to sling that beer bottle at me. I was going to hit him but how I hit him I crack him like this. I hit here over there. He went on the fence and I went on the fence and fell on the fence and got on the — I got up slowly. I told him he better leave and [Meyer] told him the same thing.

*Id.* at 96. Defendant admits that he "hit [Rockwell] one time and that was it." *Id.* at 111.

Following the closing arguments of counsel, the trial court instructed the jurors on the law regarding Assault in the Second Degree, then turned the case over to them for deliberations. No instruction was requested by either party regarding the LIO of Assault in the Third Degree, and the trial court did not, *sua sponte*, instruct the jury on such LIO.

The jury subsequently convicted Defendant of Assault in the Second Degree and Defendant was sentenced to probation for a term of five years. This appeal followed.

## DISCUSSION

### I.

### *Trial Court's Failure to Give LIO Instruction Sua Sponte as Plain Error*

#### A.

In Hawai'i, a trial court "is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the

defendant of the offense charged and convicting him of the included offense." HRS § 701–109(5) (1985). *See also* **State v. Sneed**, 68 Haw. 463, 718 P.2d 280 (1986). In determining whether the LIO instruction was mandated in this case, therefore, we must initially determine whether, based on the evidence in this case, the jury could rationally have acquitted Defendant of second degree assault charges and convicted him instead of third degree assault.

Pursuant to HRS § 707–711(1)(a), the offense of Assault in the Second Degree is committed if "[t]he person intentionally or knowingly causes *substantial bodily injury* to another" (emphasis added). "Substantial bodily injury," is defined by HRS § 707–700 (Supp. 1992) as:

*bodily injury* which causes:

(1) *A major avulsion, laceration, or penetration of the skin;*

(2) A chemical, electrical, friction, or scalding burn of second degree severity;

(3) *A bone fracture;*

(4) A serious concussion; or

(5) A tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs. [Emphases added.]

Assault in the Third Degree, on the other hand, is committed if a person "[i]ntentionally, knowingly, or recklessly causes *bodily injury* to another person," HRS § 707–712(1)(a) (1985) (emphasis added), and "bodily injury" is defined by HRS § 707–700 as "physical pain, illness, or any impairment of physical condition."

The difference between these two types of assault, therefore, is the degree of injury, and pursuant to HRS

§ 701–109(4)(c) (1985),[2] every charge of Second Degree Assault under HRS § 707–711(1)(a) necessarily includes the lesser offense of Third Degree Assault under HRS § 707–712(1)(a).

The uncontroverted evidence in this case established that Rockwell sustained two scalp hematomas, a sprained left wrist, and a one–inch laceration to the left rear–side of his head which bled considerably and was deep enough to require three stitches. There was also evidence that Rockwell may have suffered a fractured rib.

Defendant contends that Rockwell's injuries did not amount to "substantial bodily injury" since: (1) "the nature of [Rockwell's] injury was such that it allowed Rockwell to drive himself home from Nu['] uanu to Waipahu, to refuse emergency ambulance service, and to delay seeking any medical treatment for almost three hours after sustaining the injury"; (2) the evidence did not conclusively establish that Rockwell suffered a fractured rib; and (3) Rockwell's most significant injury, the one–inch laceration, "did not rise to the level of 'a major laceration' for purposes of establishing 'substantial bodily injury.' " Opening Brief at 26–27. Therefore, there was a rational basis in the evidence for a verdict acquitting

---

[2] HRS § 701–109(4)(c) (1985) provides:

(4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

* * *

(c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest . . . suffices to establish its commission.

Defendant of the charged offense and convicting him of the LIO of Assault in the Third Degree.

Whether Rockwell's injuries amounted to a "bone fracture" or a "major laceration, avulsion, or penetration of the skin" so as to constitute "substantial bodily injury" was a question of fact for the jury, which could have concluded that Rockwell did not sustain a "substantial bodily injury." Consequently, Defendant could have been acquitted of the Second Degree Assault charges. The jury could also have concluded that Rockwell suffered at least physical pain, illness, or harm amounting to bodily injury and therefore convicted Defendant of the LIO of Third Degree Assault. Therefore, a rational basis existed in the evidence for acquitting Defendant of the greater offense and convicting him of the LIO, and pursuant to HRS § 701–109(5), Defendant was entitled to the LIO instruction.

## B.

Hawai'i Rules of Penal Procedure (HRPP) Rule 30(e) provides in relevant part:

> **(e) Instructions and Objections.** The court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the refusal to give, or the modification of, an instruction, whether settled pursuant to subdivision (b) or subdivision (c), of this rule, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

In this case, Defendant neither requested an LIO instruction nor objected to the trial court's instructions as

read.[3]    Therefore, we are unable to consider the alleged error on appeal unless the failure of the trial court to give the instruction, *sua sponte*, constituted plain error or a defect affecting the substantial rights of Defendant. HRPP Rule 52(b). *See also* **State v. Onishi**, 59 Haw. 384, 385, 581 P.2d 763, 765 (1978).

The Hawai'i case law has not determined the issue of whether, under HRPP Rule 30(e), a trial court commits plain error when it fails, *sua sponte*, to give an LIO instruction reasonably warranted by the evidence.[4]

---

[3] There is no inference in the record that Defendant's trial counsel in any way invited the trial court not to submit an LIO instruction.

[4] In **Territory v. Joaquin**, 39 Haw. 221 (1952), the Hawai'i Supreme Court stated "when there is evidence adduced tending to show the commission of a lesser grade or degree of the offense, the court is required to instruct the jury upon those inferior grades or degrees . . . in support of which there is other evidence properly applicable and upon which the jury would be warranted in finding the accused guilty, even though such instructions are not specifically requested." *Id.* at 232. However, *Joaquin* was decided prior to the adoption of the Hawai'i Rules of Penal Procedure.

In **State v. Sneed**, 68 Haw. 463, 465, 718 P.2d 280, 282 (1986), the Hawai'i Supreme Court indicated that when a defendant failed to request an LIO instruction, "[t]he trial court did not commit plain error by failing to, *sua sponte*, give an instruction on the lesser included offenses." However, the supreme court concluded that no rational basis existed in the evidence for an LIO. *Id.*

In **State v. Ferreira**, 8 Haw. App. 1, 4–5, 791 P.2d 407, 409, *cert. denied*, 71 Haw. 668, 833 P.2d 901 (1990), this court held that "[i]n cases involving one or more included offenses, [the] statutes mandate the giving of included offense instructions over both the prosecution's and defendant's objection." However, in the instant case, neither party raised any objection to the instructions given by the trial court.

The majority of courts from other jurisdictions which have considered the issue, however, have concluded that absent an objection or request for an LIO instruction, plain error is not committed when a trial court fails to give such an instruction. *United States v. Vincent*, 648 F.2d 1046, 1050 (5th Cir. 1981); *United States v. Carey*, 475 F.2d 1019, 1022 (9th Cir. 1973); *People v. Brown*, 677 P.2d 406, 409 (Colo. App. 1983). Some of these courts, recognizing that defendants are often willing to waive an appropriate LIO instruction on the gamble that they will be acquitted of the greater charge, rationalize that a defendant should be entitled to forego an LIO instruction for strategic reasons, *United States v. Lopez Andino*, 831 F.2d 1164, 1171 (1st Cir. 1987), and that the LIO issue "is an issue best resolved, in our adversary system, by permitting counsel to decide on tactics." *Walker v. United States,* 418 F.2d 1116, 1119 (D.C. Cir. 1969).

Other courts, on the other hand, have concluded that in criminal cases, a trial court has the duty, *sua sponte*, to give an appropriate LIO instruction, reasonably based on the evidence. *People v. Wickersham*, 32 Cal. 3d 307, 330, 650 P.2d 311, 323, 185 Cal. Rptr. 436, 448 (1982); *State v. Riera*, 276 N.C. 361, 172 S.E.2d 535 (1970); *see also United States v. Singleton*, 447 F. Supp. 852, 854 (S.D.N.Y. 1978) (dictum).

In *Wickersham, supra,* the California Supreme Court observed:

> The trial court functions both as a neutral arbiter between two contesting parties and as the jury's guide to the law. This role requires that the court fully instruct the jury on the law applicable to each particular case. " 'It is settled that in criminal cases, even in the absence of a request,

the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. . . . The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' . . . That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present, but not when there is no evidence that the offense was less than that charged. . . ."

The fulfillment of this obligation ensures that the jury will consider the full range of possible verdicts—not limited by the strategy, ignorance, or mistakes of the parties. The jury should not be constrained by the fact that the prosecution and defense have chosen to focus on certain theories. "Just as the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense. . . ." Furthermore, where counsel is not aware of alternative verdicts or incorrectly believes them to be irrelevant to the case, the trial court's action will avoid an unwarranted all–or–nothing choice for the jury and will ensure that the verdict is no harsher or more lenient than the evidence merits. These policies reflect concern both for the rights of persons accused of crimes and for the overall administration of justice.

32 Cal. 3d at 323–24, 650 P.2d at 319–20, 185 Cal. Rptr. at 444–45 (citations omitted).

We agree that the interests of justice require that a jury in a criminal case be instructed on every LIO reasonably warranted by the evidence. As one legal scholar has articulated:

> [W]e must not forget that justice cuts both ways. If it is just to acquit an innocent man, it is also just to convict the guilty. Criminal trials are not sporting events and " 'courts are not gambling halls but forums for the discovery of truth.' " The ultimate goal of criminal proceedings should be a solemn search for the truth, so that one accused of crime will be acquitted or convicted depending on the sufficiency of the evidence when measured against the reasonable–doubt standard of proof. Moreover, if the defendant's alleged conduct constitutes a lesser–included crime within the offense charged, and the defendant has received sufficient notice thereof to adequately prepare his defense, he will have received that quantum of fairness to which he is entitled under the principles of due process.
>
> Undeniably, the defendant has a constitutional right under the sixth amendment to offer a defense, and, as an adjunct to this right, to devise a proper and appropriate trial strategy to blunt or otherwise neutralize the thrust of the prosecution's case–in–chief. But this right and option, while relevant to the jury's duty to properly perform its constitutional functions in arriving at a just decision, is separate and distinct from the independent duty of the court to reasonably assist

and instruct the jury in the intelligent discharge of these functions so as to avoid a miscarriage of justice. This duty is of paramount significance to the moral integrity of the judicial process and the crucial need for accurate results in criminal trial proceedings. No one, after all, has a constitutional right to withhold the truth from a jury as a matter of trial tactics and strategy; nor does one possess a constitutional right to either confuse or deceive a jury. In short, neither the defendant nor the government should be permitted to effectively undermine the accuracy of the factfinding process in the criminal justice system, and thereby contribute to a miscarriage of justice. It follows that the reliability of the truth–determining process is so essential to society's interest in maintaining the integrity of judicial proceedings that the power of a criminal trial court to submit constitutionally appropriate lesser–included offense instructions to the jury must take precedence over the decision of the accused, as a matter of trial tactics and strategy, to waive his right to such instructions.

Edward G. Mascolo, *Procedural Due Process and the Lesser–Included Offense Doctrine*, 50 Alb. L. Rev. 263, 299–300 (1986) (footnotes omitted).

In the instant case, there was sufficient evidence proffered at trial from which a jury could have reasonably concluded that Defendant was guilty of Assault in the Third Degree rather than Assault in the Second Degree. Accordingly, the trial court was obligated, even absent a request by either party, to so instruct the jury. The trial court's failure to do so constitutes plain error.

## II.

### *Ineffective Assistance of Counsel*

In view of the above discussion, we find it unnecessary to address Defendant's allegations that he was denied the effective assistance of counsel at trial.

## CONCLUSION

The judgment and sentence entered by the First Circuit Court on January 13, 1992 is vacated, and this case is remanded for a new trial in accordance with the principles announced in this decision.

*Alvin T. Sasaki* on the briefs for defendant–appellant.

*Patricia A. Loo*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.