879 P.2d 492

**STATE of Hawai'i, Petitioner–Appellee,**

v.

**Walter KUPAU, Jr., Respondent–Appellant.**

**No. 15885.**

Supreme Court of Hawai'i.

Aug. 22, 1994.

Peter V.N. Esser, on the briefs, Honolulu, for respondent-appellant Walter Kupau, Jr.

Patricia A. Loo, Deputy Pros. Atty., on the briefs, Honolulu, for petitioner-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

On June 13, 1990, a Honolulu grand jury returned an indictment against the respondent-appellant Walter Kupau, Jr., charging him with having intentionally or knowingly caused substantial bodily injury to James Rockwell on or about September 6, 1988, thereby committing the offense of assault in the second degree in violation of Hawai'i Revised Statutes (HRS) § 707–711(1)(a) (Supp.1992).[1] A jury subsequently found Kupau guilty as charged, and the circuit court sentenced him to probation for a term of five years.

Kupau appealed his conviction and sentence, claiming, *inter alia*, that the circuit court committed plain error[2] by failing, *sua sponte*, to instruct the jury as to the included offense of assault in the third degree.[3] Kupau's opening brief at 20. We assigned the

1. HRS § 707–711(1) (Supp.1992) provides in relevant part:
    **Assault in the second degree.** (1) A person commits the offense of assault in the second degree if:
    (a) The person intentionally or knowingly causes substantial bodily injury to another[.]
    Pursuant to HRS § 707–711(2) (Supp.1992), assault in the second degree is a Class C felony.
    HRS § 707–700 (Supp.1992) defines "substantial bodily injury" to mean "bodily injury which causes: (1)[a] major avulsion, laceration, or penetration of the skin; (2)[a] chemical, electrical, friction, or scalding burn of second degree severity; (3)[a] bone fracture; (4)[a] serious concussion; or (5)[a] tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs." HRS § 707–700 further defines "bodily injury" to mean "physical pain, illness, or any impairment of physical condition."
    Neither HRS § 707–700 nor any other provision of the Hawai'i Penal Code, HRS Title 37 (1985 & Supp.1992), define any of the medical terms enumerated above, including "avulsion" or "laceration." Moreover, the Hawai'i Penal Code is silent regarding, and therefore leaves to the trier of fact to determine, what constitutes a "major" avulsion or laceration. *Cf. State v. Silva*, 75 Haw. 419, 432–34, 864 P.2d 583, 590 (1993) (this court resorted to extrinsic sources to ascertain meaning of "serious, permanent disfigurement" and "bodily member" in order to construe term "serious bodily injury," HRS § 707–700, within context of HRS § 707–710 (1985 & Supp.1992) (assault in the first degree)).
    HRS § 702–206 (1985 & Supp.1992) defines the states of mind necessary to establish culpability under the Hawai'i Penal Code. HRS § 702–206(1) (1985) provides:

    (1) "Intentionally."
    (a) A person acts intentionally with respect to [the person's] conduct when it is [the person's] conscious object to engage in such conduct.
    (b) A person acts intentionally with respect to attendant circumstances when [the person] is aware of the existence of such circumstances or believes or hopes that they exist.
    (c) A person acts intentionally with respect to a result of [the person's] conduct when it is [the person's] conscious object to cause such a result.
    HRS § 707–206(2) (1985) provides:
    (2) "Knowingly."
    (a) A person acts knowingly with respect to [the person's] conduct when [the person] is aware that [the person's] conduct is of that nature.
    (b) A person acts knowingly with respect to attendant circumstances when [the person] is aware that such circumstances exist.
    (c) A person acts knowingly with respect to a result of [the person's] conduct when [the person] is aware that it is practically certain that [the person's] conduct will cause such a result.

2. Hawai'i Rules of Penal Procedure (HRPP) 52(b) (1989) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

3. HRS § 707–712 (1985) provides in relevant part:
    **Assault in the third degree.** (1) A person commits the offense of assault in the third degree if [the person]:

appeal to the Intermediate Court of Appeals (ICA), which, in a published opinion, vacated the circuit court's judgment and sentence and remanded the matter to the circuit court for a new trial. *State v. Kupau*, — Hawai'i —, —, 879 P.2d 559, 565 (Haw.Ct.App. 1994). In so doing, the ICA held as follows:

> In the instant case, there was sufficient evidence proffered at trial from which a jury could have reasonably concluded that [Kupau] was guilty of [assault in the third degree] rather than [assault in the second degree]. Accordingly, the trial court was obligated, even absent a request by either party, to so instruct the jury. The trial court's failure to do so constitutes plain error.

*Id.* at —, 879 P.2d at 565.

The petitioner-appellee State of Hawai'i (State or prosecution) applied to this court for a writ of certiorari, urging that: (1) "[the] trial court is not obligated to instruct the jury, *sua sponte*, as to a lesser included offense [ ] if there is no rational basis for the instruction" (a proposition with which we agree, *see* HRS § 701–109(5) (1985)); and (2) "[even] if . . . there was a rational basis for a [lesser included offense] instruction [as to

(a) Intentionally, knowingly, or recklessly causes bodily injury to another person[.]
. . . .
(2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

HRS § 702–206(3) (1985 & Supp.1992) provides:
(3) "Recklessly."
(a) A person acts recklessly with respect to [the person's] conduct when [the person] consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.
(b) A person acts recklessly with respect to attendant circumstances when [the person] consciously disregards a substantial and unjustifiable risk that such circumstances exist.
(c) A person acts recklessly with respect to a result of [the person's] conduct when [the person] consciously disregards a substantial and unjustifiable risk that [the person's] conduct will cause such a result.
(d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's con-

assault in the third degree], the [circuit] court's failure to instruct the jury *sua sponte* was not 'plain error' " (a proposition with which we disagree). State's application for writ of certiorari at 5, 7.

Although we agree with the ICA's disposition of the present appeal, we granted the State's application for certiorari because we believe that the analysis set forth in the ICA's decision is incomplete. We therefore provide the following elaboration.

## I. *BACKGROUND*

In its decision, the ICA thoroughly explicated the facts relevant to the present appeal, and we need not regurgitate them here. For present purposes, the following synopsis is sufficient. At trial, the complaining witness, James Rockwell, testified that Kupau subjected him to an unprovoked attack, in which Kupau and another person (Meyer) grabbed him under the armpits, dragged him along a sidewalk outside Meyer's house and through a picket gate, and threw him onto the paved lane. According to Rockwell, Kupau then pounded his head into the pavement and commenced to beat his ribs and the side of his head. Rockwell testified that the al-

duct and the circumstances known to [the person], the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

HRS § 701–109 (1985) provides in relevant part:
**Method of prosecution when conduct establishes an element of more than one offense.**
. . . .
(4) A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when:
. . . .
(c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person . . . or a different state of mind indicating [a] lesser degree of culpability suffices to establish its commission.
(5) The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

tercation lasted "at most five minutes." 10/21/91 Tr. at 16–17, 21–22.

Meyer and Kupau's trial testimony diverged substantially from Rockwell's. Meyer testified that Rockwell initiated a noisy and belligerent encounter at Meyer's home and that Kupau, his neighbor, telephoned to offer assistance. Meyer declined the help at that time, but claimed that shortly thereafter a scuffle ensued between himself and Rockwell and that he then called for Kupau. Meyer testified that Rockwell was holding a beer bottle throughout the confrontation and that, when Kupau appeared, Rockwell raised the bottle in the air. *Id.* at 37–39.

Kupau testified that, as he approached the scene, Rockwell appeared to be poised to strike Meyer with the bottle, so Kupau struck Rockwell first. Alternatively, Kupau maintained that "I went go for hit [Rockwell] because I thought he's going to sling that beer bottle at me. . . . I crack him. . . . He went on the fence and I went on the fence and fell on the fence[.]" *Id.* at 96. Kupau insisted that he "hit [Rockwell] one time and that was it," *id.* at 111, and steadfastly held to his position that he had acted in self-defense.

By stipulation of the parties, medical records were received in evidence reflecting that, as a result of the incident variously described above, Rockwell suffered: (1) a one-inch laceration to the left side of his head, for which he received three stitches; (2) two hematomas to his head; (3) a sprained left wrist; and (4) two possible left rib fractures. Record on Appeal at 153–54, 162.

At the close of the evidence, the circuit court instructed the jury as to the law regarding assault in the second degree. Neither the prosecution nor Kupau requested an instruction regarding the included offense of assault in the third degree, and the circuit court did not, *sua sponte*, give such an instruction.

As noted, Kupau was convicted of assault in the second degree and was sentenced to a five year term of probation.

## II. DISCUSSION

### A. There Was A Rational Basis In The Evidence For A Verdict Acquitting Kupua Of The Offense Charged And Convicting Him Of The Included Offense.

In *Kupau, supra*, the ICA correctly noted that "[in] Hawai'i, a trial court 'is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.' HRS § 701–109(5) (1985)." *Id.* at ——, 879 P.2d at 562. Accordingly, the ICA properly framed the threshold question as "whether, based on the evidence in this case, the jury could rationally have acquitted [Kupau] of second degree assault charges and convicted him instead of third degree assault." *Id.*

In order to answer the threshold question thoroughly, it is necessary to understand the interrelationship among a number of key provisions of the Hawai'i Penal Code, which establish a fundamental paradigm critical to a complete understanding of the substantive offenses set out in the code. In this connection, we noted in *State v. Chung*, 75 Haw. 398, 411, 862 P.2d 1063, 1070 (1993), that:

"HRS § 701–114 [ (1)(a) and (b) (1985) ] requires proof beyond a reasonable doubt of each element of the offense, as well as '[the] state of mind required to establish each element of the offense.'" *State v. Pinero*, [75 Haw. 282, 300, 859 P.2d 1369, 1378 (1993) ]. Moreover, HRS § 702–204 (1985) provides in relevant part that "a person is not guilty of an offense unless [the person] acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense." Finally, HRS § 702–207 (1985) provides that "[when] the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears."

*See also In re Doe, Born on January 5, 1976*, 76 Hawai'i 85, 92, 869 P.2d 1304, 1311 (1994). In addition, "[pursuant] to HRS § 702–205

(1985),[4] [the requisite] state of mind applies to such conduct, attendant circumstances, and results of conduct as are specified by the definition of the offense." *Chung,* 75 Haw. at 411–12 n. 8, 862 P.2d at 1071 n. 8.

With the fundamental paradigm of the Hawai'i Penal Code in mind, we now turn our attention to the ICA's analysis in this case.

The ICA's rationale as to why the circuit court erred in failing to instruct the jury regarding the included offense of assault in the third degree was as follows:

> The difference between these two types of assault [*i.e.,* assault in the second and third degrees] ... is the degree of injury, and pursuant to HRS § 701–109(4)(c) (1985), every charge of [assault in the second degree] under HRS § 707–711(1)(a) necessarily includes the [included] offense of [assault in the third degree] under HRS § 707–712(1)(a).
>
> . . . .
>
> Whether Rockwell's injuries amounted to a "bone fracture" or a "major laceration, avulsion, or penetration of the skin" so as to constitute "substantial bodily injury" was a question of fact for the jury, which could [rationally] have concluded that Rockwell did not sustain a "substantial bodily injury." Consequently, [Kupau] could have been acquitted of the [assault in the second degree] charges [sic]. The jury could also have [rationally] concluded that Rockwell suffered at least physical pain, illness, or harm amounting to bodily injury and therefore convicted [Kupau] of the [included offense] of [assault in the third degree]. Therefore, a rational basis existed in the evidence for acquitting [Kupau] of the greater offense and convicting him of the [included offense], and pursuant to HRS § 701–109(5), [Kupau] was entitled to the [included offense] instruction.

*Kupau,* —— Hawai'i at —— – ——, 879 P.2d at 562–563 (footnote omitted).

The ICA's analysis is not incorrect as far as it goes; assault in the second degree, pursuant to HRS § 707–711(1)(a), and assault in the third degree, pursuant to HRS § 707–712(1)(a), do indeed differ with respect to the requisite degree of injury—*i.e.,* the result of Kupau's conduct. *See* HRS §§ 701–109(4)(c), 701–114(a), and 702–205. But in light of the nature of Rockwell's injuries, *see supra* at 6, we believe that there is a more significant difference and a broader issue— Kupau's requisite *state of mind* with respect to his conduct and the result thereof. *See* HRS §§ 701–109(4)(c), 701–114(1)(b), 702–204, and 702–205.

First, assault in the second degree, in violation of HRS § 707–711(1)(a), requires proof beyond a reasonable doubt of an intentional or knowing state of mind as to each material element in order to establish culpability; assault in the third degree, in violation of HRS § 707–712(1)(a), requires proof beyond a reasonable doubt of an intentional, knowing, or *reckless* state of mind. In this connection, it is significant that Kupau claims that he struck Rockwell only once and in self-defense. If Kupau merely acted recklessly with respect to his *conduct, see* HRS §§ 702–206(3)(a) and 702–205, then he can be guilty at most of assault in the third degree even if his conduct resulted in Rockwell suffering substantial bodily injury. *See* HRS §§ 707–711(1)(a) and 707–712(1).

Second, and equally important, even if Kupau acted intentionally or knowingly with respect to his conduct and Rockwell in fact suffered substantial bodily injury as a *result* thereof, if he did not so act with respect to that result—*i.e.,* "substantial bodily injury," *see* HRS §§ 707–711(1)(a) and 707–700—but merely acted *recklessly* with respect thereto,

---

4. HRS § 702–205 (1985) provides:
   **Elements of an offense.** The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
   (a) Are specified by the definition of the offense, and
   (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

The absence of any references to HRS §§ 701–114, 702–204, and 702–205 substantially accounts for the incompleteness of the ICA's analysis of Kupau's appeal. In another context, however, the ICA recently addressed HRS §§ 701–114(1)(a) and 702–205 in *State v. Nobriga,* 10 Haw.App. 353, 358, 873 P.2d 110, 113 (1994).

*see* HRS §§ 702–206(3)(c) and 702–205, then he may, depending upon the circumstances, likewise be guilty at most of assault in the third degree. *See* HRS §§ 707–711(1)(a), 707–712(1), 702–214 (1985),[5] and 702–215 (1985).[6]

B. *The Circuit Court's Failure To Instruct The Jury Regarding The Included Offense Of Assault In The Third Degree Constituted A Plain Error Or Defect Affecting Kupau's Substantial Rights.*

■ In its decision, the ICA noted that "[in] this case, [Kupau] neither requested an [included offense] instruction nor objected to the [circuit] court's instructions as read." *Kupau,* at ——, 879 P.2d at 563 (footnote omitted). Therefore, the ICA correctly deemed itself "unable to consider the alleged error on appeal unless the failure of the [circuit] court to give the instruction, *sua sponte,* constituted plain error or a defect affecting [Kupau's] substantial rights...." *Id.* (citing, *inter alia,* HRPP 52(b)).

Footnoting to *Territory v. Joaquin,* 39 Haw. 221 (1952), *State v. Sneed,* 68 Haw. 463, 465, 718 P.2d 280, 282 (1986), and *State v. Ferreira,* 8 Haw.App. 1, 4–5, 791 P.2d 407, 409, *cert. denied,* 71 Haw. 668, 833 P.2d 901 (1990), the ICA then began its analysis with the observation that "[the] Hawai'i case law has not determined the issue ... whether, under HRPP Rule 30(e),[7] a trial court commits plain error when it fails, *sua sponte,* to give an [included offense] instruction reasonably warranted by the evidence." *Kupau,* —— Hawai'i at —— & n. 4, 879 P.2d at 563 & n. 4.[8] Accordingly, the ICA looked to other jurisdictions to resolve the issue.

We note that recent case law of this court is pertinent to the ICA's holding that the circuit court in the present case was "obligated, even absent a request by either party," to instruct the jury regarding the included offense of assault in the third degree and that the circuit "court's failure to do so [therefore

---

5. HRS § 702–214 (1985), entitled "Causal relationship between conduct and result," provides that "[conduct] is the cause of a result when it is an antecedent but for which the result in question would not have occurred."

The commentary on HRS § 702–214 provides in relevant part:

This section and the following three sections deal with the problem of causation, which is of critical importance in those offenses in which a particular result of conduct is an element. The difficulty of the problem of causation does not lie in making a determination of actual causation, but rather in setting the appropriate standard for determining those instances in which the defendant will not be held liable for the result of his [or her] conduct because he [or she] did not intend or contemplate the result or was unaware of the risk that it would obtain....

[This] section states the definition of actual causation. It is commonly called the "but-for" test. Once it is established that the defendant's conduct was the antecedent but for which the prohibited result would not have occurred, consideration of causality in its strict sense is finished and attention must then shift to §§ 702–215 and 216 which deal with the defendant's culpability with respect to the result....

6. HRS § 702–215 (1985) provides in relevant part:

**Intentional or knowing causation; different result from that intended or contemplated.** In the following instances intentionally or knowingly causing a particular result shall be deemed to be established even though the actual result caused by the defendant may not have been within his [or her] intention or contemplation:

....

(2) The actual result involves the same kind of injury or harm as the intended or contemplated result and is not too remote or accidental in its occurrence ... to have a bearing on the defendant's liability or on the gravity of his [or her] offense.

7. HRPP 30(e) (1981) provides in relevant part:

**Instructions and Objections.** The court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the refusal to give, or the modification of, an instruction ... unless [the party] objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which [the party] objects and the grounds of [the party's] objection.... Objections made to instructions at the time they are settled shall be deemed preserved even though not restated after the court has instructed the jury.

8. Although the ICA may have been technically correct, *Joaquin, Sneed,* and *Ferreira* are certainly suggestive of the answer to the question posed.

constituted] plain error." *Kupau*, at ——, 879 P.2d at 565.

■ In *State v. Pinero*, 75 Haw. 282, 859 P.2d 1369 (1993), we recently articulated the general proposition that

> Ordinarily, instructions to which no objection was made at trial may not be raised as error on appeal. [Hawai'i] Rules of Penal Procedure (HRPP) Rule 30(e). An appellate court may presume that an instruction correctly stated the law if no objection to the allegedly erroneous instruction was made at trial..... Where an erroneous instruction affected the substantial rights of a defendant, however, we *may* notice the error as "plain error" and remand for corrective action. HRPP Rule 52(b); *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993); *State v. Agrabante*, 73 Haw. 179, 184, 830 P.2d 492, 495 (1992); *State v. Fox*, 70 Haw. 46, 55–57, 760 P.2d 670, 675–76 (1988).

*Id.* at 291–92, 859 P.2d at 1374 (emphasis in original and footnote omitted). Given the plain language of HRPP 30(e),[9] construed in conjunction with HRPP 52(b),[10] the proposition applies equally to jury instructions that, for whatever reason, the circuit court fails to give under circumstances where the omission affects a defendant's substantial rights.

*Kelekolio*, cited with approval in *Pinero*, is also instructive with respect to the issue before us. In that case, the defendant

> [urged] ... that the jury instructions as a whole were "prejudicially insufficient" because "the [trial] court never instructed the jury on the issue of the voluntariness of [his] confession," thus depriving the jury of the opportunity "to make the ultimate determination of whether [his] confession was freely and voluntarily made." ... Specifically, [the defendant] complains that "the jury was never ... told that it could reject [his] confession if it found the confession to be involuntary." ...
>
> *When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions*

given are prejudicially insufficient, erroneous, inconsistent, or misleading. State v. Halemanu, 3 Haw.App. 300, 306, 650 P.2d 587, 592 (1982) (citing, inter alia, State v. Reiger, 64 Haw. 510, 644 P.2d 959 (1982)).

> We note that *[the defendant] never requested an instruction on the issue of* voluntariness; *he therefore alleges plain error on appeal.* This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes. *State v. Fox*, 70 Haw. [at] 55–56, 760 P.2d [at] 675–76.... Nevertheless, *where plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court. Id.* at 55, 760 P.2d at 675; *see also State v. Grindles*, 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989); *State v. Tiedemann*, 7 Haw. App. 631, 635, 790 P.2d 340, 342 (1990); [HRPP] 52(b) (1989)
>
> . . . .

*Kelekolio*, 74 Haw. at 514–15, 849 P.2d at 74–75 (emphasis added). While *Kelekolio* does not expressly address plain error in the context of omitted included offense instructions, it *does* address plain error in the context of omitted jury instructions. Thus, being a relevant tile in the mosaic of this jurisdiction's evolving jurisprudence, we believe it to be a significant element of the analytical resolution of the present appeal.

In the specific context of included offense instructions, it is also the established law of this jurisdiction that "the prosecution as well as [the] defendant may request an instruction on a lesser included offense," *Sneed*, 68 Haw. at 465, 718 P.2d at 282, and that such an instruction may be given "over both the prosecution's and the defendant's objection." *Ferreira*, 8 Haw.App. at 4–5, 791 P.2d at 409. However, prior to the present matter, no appellate decision in this jurisdiction has ex-

---

9. *See supra* note 6.

10. *See supra* note 2.

pressly addressed the question whether, under any circumstances, a defendant can, as a tactical matter, legitimately seek to preclude the trial court from giving included offense instructions.

We note that when a jury is instructed only with respect to the charged offense (*e.g.*, assault in the second degree) and unanimously agrees that the prosecution has failed to prove a defendant's guilt beyond a reasonable doubt, the defendant must be acquitted and cannot subsequently be prosecuted for an included offense. *See* HRS §§ 701–109(4) and 701–111(1). If, however, included offense instructions are given, the jury can properly convict the defendant of an included offense although the defendant would then stand acquitted of the offense charged. Accordingly, it is possible that some jurors, although not convinced beyond a reasonable doubt that the defendant is guilty of *any* offense and therefore unwilling to enter a guilty verdict as to the offense charged, might nevertheless be tempted to convict the defendant of an included offense in order to achieve an unjustified compromise. *See United States v. Harary*, 457 F.2d 471 (2d Cir.1972).[11] For this reason, the defendant may perceive a tactical *disadvantage* in according the jury the chance to opt for conviction of an included offense based on the trial court's instructions.

On the other hand, if a jury is instructed only with respect to the offense charged and one or more of the jurors "believe that the defendant has committed some crime, but not necessarily the one charged," the absence of included offense instructions could cause them to "convict the defendant [of] the greater charge in order not to let the defendant go free or cause a mistrial." *State v. Yamashiro*, 8 Haw.App. 595, 607, 817 P.2d 123, 130 (1991). If instructed as to relevant included offenses and thus afforded additional conviction options, those jurors not convinced beyond a reasonable doubt of the defendant's guilt as to the offense charged would presumably have a heightened incentive to remain steadfast in their beliefs and refuse to accede to a guilty verdict on the original charge. For this reason, the defendant could well perceive a tactical *advantage* in presenting the jury with included offense instructions.

■ A defendant who believes that the disadvantages of presenting the jury with included offense instructions outweigh the advantages may not want the instructions to be given. The ICA's opinion in the present case, citing *United States v. Lopez Andino*, 831 F.2d 1164, 1171 (1st Cir.1987), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988), and *Walker v. United States*, 418 F.2d 1116, 1119 (D.C.Cir.1969), noted that some jurisdictions consequently subscribe to the view that "a defendant should be *entitled* to forego an [included offense] instruction for strategic reasons." *Kupau*, —— Hawai'i at —— – ——, 879 P.2d at 563–564 (emphasis added). However, because the prosecution has a legitimate interest in having included offense instructions given, *see Sneed*, 68 Haw. at 464, 718 P.2d at 281, we have rejected this position and have held that "the prosecution ... may request an instruction on [an] ... included offense," *id.* at 465, 718 P.2d at 282, and when it does so, the instruction must be given "over ... the defendant's objection," *see Ferreira* 8 Haw.App. at 4–5, 791 P.2d at 409, where it is supported by the evidence.

■ Given the language of *People v. Wickersham*, 32 Cal.3d 307, 323–24, 185 Cal.Rptr. 436, 444–45, 650 P.2d 311, 319–20 (1982), cited with approval by the ICA in *Kupau*, —— Hawai'i at —— – ——, 879 P.2d at 564–565, we note that

"the trial court is the *sole source* of all definitions and statements of law applica-

---

11. The jury, if it cannot agree on the basic issue of guilty, may seek the course of least resistance in the jury room and unjustly convict on the lesser offense instead of forthrightly acquitting. Those who have labored in the vineyard of litigation are aware that where the case is a hard one for the government, ... [the prosecution] will consider its task done if it can secure "the advantage of offering the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate...."
*Harary*, 457 F.2d at 479 (quoting *Cichos v. Indiana*, 385 U.S. 76, 81, 87 S.Ct. 271, 274, 17 L.Ed.2d 175 (1966) (Fortas, J., dissenting)).

ble to an issue to be resolved by the jury." *State v. Williamson*, 72 Haw. 97, 103, 807 P.2d 593, 596 (1991) (emphasis added). Moreover,

> [it] is the *duty of the circuit judge* to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he [or she] shall state to them fully the law applicable to the facts.

*State v. Feliciano*, 62 Haw. 637, 643, 618 P.2d 306, 310 (1980) (quoting *People v. Henry*, 395 Mich. 367, 373–74, 236 N.W.2d 489, 492 (1975)) (emphasis added). And faced with inaccurate or incomplete instructions, "[the] *trial court has a duty to,* with the aid of counsel, either correct the defective instruction or to otherwise *incorporate it into its own instruction.*" *State v. Riveira*, 59 Haw. 148, 155, 577 P.2d 793, 797 (1978) (emphasis added and citations omitted). . . . In other words, the ultimate responsibility properly to instruct the jury . . . [lies] with the circuit court and *not* with trial counsel.

*Briones v. State*, 74 Haw. 442, 472–73, 848 P.2d 966, 980 (1993) (Levinson, J., concurring) (emphasis in original).[12]

Under some circumstances, however, the prosecution may not desire included offense instructions for its own legitimate tactical or strategic reasons. We recognize, for instance, that if a jury convicts a defendant of an included offense, the defendant is acquitted of the offense charged. HRS § 701–110 (1985) ("A finding of guilty of a lesser included offense[.]"). Thus, if included offense instructions are given, the defendant may obtain an acquittal of the offense charged and be convicted of an included offense notwithstanding that the jurors did not agree unanimously that the defendant was not guilty of that offense. In order to avoid this eventuality, the prosecution may not want included instructions to be given in every case.

■ Accordingly, where the prosecution has not sought included offense instructions and the defendant has *expressly* objected, for his or her own tactical reasons, to the submission of such instructions to the jury, we are unwilling to impose a *per se* obligation upon the trial court to give all possible included offense instructions supported by the evidence; as we have indicated, a defendant may also have a legitimate interest in seeking to avoid them. This is not to say, however, that the trial court does not have the discretion to give included offense instructions that are supported by the evidence; the trial court is simply not required to give them.

> To say a trial court does not have a duty to instruct is considerably different from saying [that] the giving of such an instruction is forbidden. To quote the Attorney General's brief, "The courts do not live in T.H. White's ant society . . . ['The fortress was entered by tunnels, and over the entrance to each tunnel, there was a notice which said: EVERYTHING NOT FORBIDDEN IS COMPULSORY BY NEW ORDER'] White, T.H., *The Book of Merlin*, Ch. 7.)"

*People v. Barton*, 23 Cal.App.4th 400, 412, 15 Cal.Rptr.2d 649, 656–57 (Weiner, Acting P.J., concurring), *petition for review granted*, 847 P.2d 1030, 17 Cal.Rptr.2d 814 (1993).

■ Thus, in order to reconcile the competing interests of the prosecution and defendants, as well as to ensure that juries are appropriately instructed in criminal cases, we hold as follows: The trial judge must bring all included offense instructions that are supported by the evidence to the attention of the parties. The trial judge must then give each such instruction to the jury unless (1) the prosecution does not request that included instructions be given and (2) the defendant specifically objects to the included offense instructions for tactical reasons.[13] If the prosecution does not make a

---

12. This court's case law cited in the concurring opinion in *Briones* highlights the fallaciousness of the State's argument that "[the] ICA's ruling obligating the trial court to instruct on [included offenses] *sua sponte* could potentially encourage sloppy or sharp practices by defense counsel by

throwing the responsibility for asserting all the relevant and legally correct [included offense] instructions on the State and the [court]." State's supplemental brief at 11.

13. The trial judge must enter into a colloquy, on the record, directly with the defendant to insure

request and the defendant makes a tactical objection, the trial judge must then exercise his or her discretion as to whether the included offense instructions should be given. The trial judge's discretion should be guided by the nature of the evidence presented during the trial,[14] as well as the extent to which the defendant appears to understand the risks involved.

In the present case, Kupau did not expressly object to the trial court instructing the jury regarding the included offense of assault in the third degree. On the record before us, we therefore hold that the circuit court was obligated, even absent a request by either party, to instruct the jury regarding the included offense of assault in the third degree and that its failure to do so constituted plain error.

## III. CONCLUSION

Based on the foregoing analysis, we affirm the decision of the ICA. The judgment and sentence of the circuit court is vacated and this case is remanded for a new trial in accordance with the principles announced in this opinion.

that the defendant understands the effect and potential consequences of waiving the right to have the jury instructed regarding included offenses. *See, e.g., State v. Liner,* 98 N.C.App. 600, 608–09, 391 S.E.2d 820, 824, *review denied,* 327 N.C. 435, 395 S.E.2d 693 (1990); *People v. Duncan,* 53 Cal.3d 955, 969–70, 810 P.2d 131, 138, 281 Cal.Rptr. 273, 280 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1269, 117 L.Ed.2d 497 (1992).

14. For example, although there may be sufficient evidence to support a guilty verdict as to a charged offense, if the weight of the evidence is to the contrary but supports guilt as to an included offense, the trial judge would be justified in giving an instruction regarding the included offense, even if it has not been requested by the prosecution and the defendant has expressly objected to it for tactical reasons.